IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**LIFEPOINT HOSPITALS, INC.,**
**Employer Below, Petitioner**

**FILED**
**February 2, 2023**
EDYTHE NASH GAISER, CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**vs.)**    **No. 22-ICA-206**    (JCN: 2021024861)

**JILL STONE,**
**Claimant Below, Respondent**


**MEMORANDUM DECISION**

Petitioner Lifepoint Hospitals, Inc., appeals the September 27, 2022, order of the West Virginia Workers' Compensation Board of Review ("Board"). Respondent Jill Stone filed a timely response.[1] Petitioner did not file a reply. The issue on appeal is whether the Board erred in reversing the claim administrator's decision terminating temporary total disability ("TTD") benefits.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds that there is error in the lower tribunal's decision but no substantial question of law. This case satisfies the "limited circumstances" requirement of Rule 21(d) of the Rules of Appellate Procedure, and a memorandum decision is appropriate to reverse the matter for further proceedings consistent with this decision.

In April of 2021, Ms. Stone, an x-ray technician, was injured in the course of and resulting from her employment at Lifepoint Hospital.[2] By order dated April 23, 2021, the claim administrator held Ms. Stone's workers' compensation claim compensable for strain of unspecified muscle, facia, and tendon at the left shoulder and upper arm level. Ms. Stone was referred to J. Prudhomme, M.D., who performed a left shoulder arthroscopy with repair of a large interior labral tear on June 17, 2021. Dr. Prudhomme took Ms. Stone off work and instructed her to participate in physical therapy.

On September 8, 2021, Ms. Stone was seen by Jon Kline, PA-C, who worked in Dr. Prudhomme's office. Mr. Kline noted that Ms. Stone's range of motion was fairly good,

---

[1] Petitioner is represented by Jane Ann Pancake, Esq. and Jeffrey B. Brannon, Esq. Respondent is represented by Reginald D. Henry, Esq. and Lori J. Withrow, Esq.

[2] Ms. Stone states that she was injured when she moved a patient to perform an x-ray.

although she did not have much strength. Mr. Kline opined that Ms. Stone could return to work on September 13, 2021, so long as she was given light duty and was not permitted to push, pull, or lift anything over twenty-five pounds. If light work were not available, Ms. Stone was to remain off work for at least six more weeks pending further evaluation.

On September 15, 2021, Ms. Stone resigned from her position. On October 1, 2021, the claim administrator suspended Ms. Stone's temporary total disability ("TTD") benefits, instructing her that her TTD benefits would be closed in thirty days unless she submitted evidence showing why the benefits should remain open.

Ms. Stone returned to see Dr. Prudhomme on October 27, 2021. In the clinical notes, Dr. Prudhomme noted that Ms. Stone had resigned from her job "for a variety of reasons." Dr. Prudhomme recommended that Ms. Stone continue with physical therapy and noted that she would not be able to perform her "regular" job duties. Dr. Prudhomme did not address Ms. Stone's ability to perform light duty. By order dated November 1, 2021, the claim administrator closed the claim for TTD benefits after Ms. Stone failed to submit any evidence demonstrating that TTD benefits should continue.

Subsequently, physical therapy progress notes from December of 2021 showed that Ms. Stone's range of motion and strength had regressed. The physical therapist indicated that Ms. Stone should continue with physical therapy. On January 3, 2021, Ms. Stone saw Dr. Prudhomme, who recommended that she continue with physical therapy and undergo an EMG of her left upper extremity to rule out nerve root compression or other condition. According to the Board's order, Dr. Prudhomme indicated that Ms. Stone remained unable to work.[3]

By order dated September 27, 2022, the Board reversed the claim administrator's November 1, 2021, order and ordered that TTD benefits should continue through January 3, 2022, and for such other periods of time as are substantiated through the introduction of credible medical evidence. The Board found that "[t]he record does not reflect that either light duty was available or that the claimant returned to her former job as [an] x-ray technician." The Board found that Ms. Stone's progress had been slow, that further physical therapy had been recommended, and that Dr. Prudhomme indicated that she was to remain off work as of January 3, 2022. The Board concluded that because Ms. Stone had not reached maximum medical improvement and had not been released to "regular duty employment," she remained eligible to receive TTD benefits pursuant to West Virginia Code § 23-4-6 (2005). The employer now appeals. By order of January 5, 2023, this Court stayed the Board's order pending appeal.

---

[3] The January 3, 2022, medical note was not included in the appendix record on appeal. By order entered on January 12, 2023, this Court, on its own motion, supplemented the record to include the medical note.

2

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
> (1) In violation of statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the Board of Review;
> (3) Made upon unlawful procedures;
> (4) Affected by other error of law;
> (5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

*Duff v. Kanawha Cnty. Comm'n*, No. 22-ICA-10, __W. Va. __, __, __S.E.2d __, __, 2022 WL 17546598, at *4 (Ct. App. Dec. 9, 2022).

On appeal, the employer argues that the Board erred in reversing the claim administrator's order and granting Ms. Stone TTD benefits through January 3, 2022, and continuing thereafter as substantiated by medical evidence. The employer argues that Ms. Stone bore the burden of demonstrating that she was entitled to further TTD benefits, and she failed to do so. Ms. Stone was released to return to work with modified duties on September 13, 2021. The employer avers that, according to the plain language of West Virginia Code § 23-4-7a(e) (2005), Ms. Stone's release to work terminated her entitlement to TTD benefits, and the Board incorrectly interpreted the statute to mean that a claimant has to be returned to full duty work in order for his or her entitlement to TTD benefits to end.

According to the employer, the statute does not place qualifications on the return to work. As such, the employer contends that the Board erred in finding that Ms. Stone's release to work on light duty was an insufficient basis for the claim administrator to suspend and terminate her benefits. The employer further argues that the Board erred in relying on Dr. Prudhomme's January 3, 2022, medical records showing that Ms. Stone needed to be off work as of that date. These are records for treatment received after the claim administrator terminated TTD benefits on November 1, 2021. The records provided to the claim administrator prior to November 1, 2021, show that Ms. Stone was able to return to light duty, and there is no medical evidence that she was unable to work with restrictions from September 13, 2021, through January 3, 2022. Based on the foregoing,

3

the employer argues that the Board clearly erred in granting Ms. Stone further TTD benefits.

We agree. West Virginia Code § 23-4-7a(a) and (e) provide as follows:

(a) The Legislature hereby finds and declares that injured claimants should receive the type of treatment needed as promptly as possible; that overpayments of benefits with the resultant hardship created by the requirement of repayment should be minimized; and that to achieve these two objectives it is essential that the commission establish and operate a systematic program for the monitoring of injury claims where the disability continues longer than might ordinarily be expected.

. . . .

(e) Notwithstanding any provision in subsection (c) of this section, the commission, successor to the commission, other private carrier or self-insured employer, whichever is applicable, shall enter a notice suspending the payment of temporary total disability benefits but providing a reasonable period of time during which the claimant may submit evidence justifying the continued payment of temporary total disability benefits when:

(1) The physician or physicians selected by the commission conclude that the claimant has reached his or her maximum degree of improvement;

(2) When the authorized treating physician advises the commission, successor to the commission, other private carrier or self-insured employer, whichever is applicable, that the claimant has reached his or her maximum degree of improvement or that he or she is ready for disability evaluation and when the authorized treating physician has not made any recommendation with respect to a permanent disability award as provided in subsection (c) of this section;

(3) When other evidence submitted to the commission, successor to the commission, other private carrier or self-insured employer, whichever is applicable, justifies a finding that the claimant has reached his or her maximum degree of improvement; or

(4) When other evidence submitted or otherwise obtained justifies a finding that the claimant has engaged or is engaging in abuse,

4

including, but not limited to, physical activities inconsistent with his or her compensable workers' compensation injury.

In all cases, a finding by the commission, successor to the commission, other private carrier or self-insured employer, whichever is applicable, that the claimant has reached his or her maximum degree of improvement terminates the claimant's entitlement to temporary total disability benefits regardless of whether the claimant has been released to return to work. *Under no circumstances shall a claimant be entitled to receive temporary total disability benefits either beyond the date the claimant is released to return to work or beyond the date he or she actually returns to work.*

(Emphasis added).

Here, the Board incorrectly found that Ms. Stone was entitled to TTD benefits because she had not been released to regular duty. However, as shown above, West Virginia Code § 23-4-7a(e) does not explicitly require that a release to work be a release to a claimant's regular duties, nor does it specifically preclude light or modified duty. Following Mr. Kline's note releasing Ms. Stone to return to work on modified duty, the claim administrator issued a notice to Ms. Stone suspending benefits and informing her that her TTD claim would be closed unless further evidence was presented. Ms. Stone presented no such evidence. Further, no medical documentation following the claim administrator's November 1, 2022, order contradicts Mr. Kline's opinion that Ms. Stone could return to work on modified duty. Rather, the medical records indicate that Ms. Stone could not return to her "regular" duties.

Moreover, in finding that there was no evidence that light duty was available, the Board did not consider that it was Ms. Stone who resigned, precluding the employer from offering her light duty. The record shows that Ms. Stone resigned two days after being released to return to work on light duty, and there is no evidence that the employer had the opportunity to offer or deny Ms. Stone light duty. Below, Ms. Stone bore the burden of presenting evidence that she was wrongly denied TTD benefits and that she was denied light duty work, but she failed to do so. Indeed, treatment notes from Dr. Prudhomme demonstrate that Ms. Stone resigned for a "variety of reasons," which fails to identify the specific reasons and does not support a finding that a lack of light duty was why she resigned. In sum, the fact that the applicable statute does not specify that a work release must be for regular duties, coupled with the complete lack of evidence that the employer denied Ms. Stone modified duties before her resignation, leads this Court to conclude that

5

the Board clearly erred in reversing the claim administrator's order and granting Ms. Stone TTD benefits through January 3, 2022.[4]

Accordingly, we reverse the Board's September 27, 2022, order.

Reversed.

**ISSUED:** February 2, 2023

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Thomas E. Scarr
Judge Charles O. Lorensen

---

[4] We note that our holding does not preclude Ms. Stone from filing a petition to reopen her claim for additional TTD benefits based upon credible medical evidence that she was not able to work on modified duty following the claim administrator's November 1, 2022, order.